NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 3 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DONALD OKADA, | No. 17-56007 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 8:15-cv-01449-JLS-KES |
| v. | |
| MARK WHITEHEAD, | MEMORANDUM* |
| Defendant-counter-claimant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Submitted December 6, 2018**
Pasadena, California

Before: RAWLINSON and BEA, Circuit Judges, and RICE,*** Chief District
Judge.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*** The Honorable Thomas O. Rice, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

This case involves a dispute between two business partners, Donald Okada and Mark Whitehead, over the terms of a settlement agreement they entered into related to their joint real estate investments. Because the parties are familiar with the facts of this case, we repeat them only as necessary to explain our decision. Okada filed the instant lawsuit against Whitehead, alleging claims for breach of contract, breach of fiduciary duty, fraud, and equitable indemnification. Okada also sought punitive damages for his breach of fiduciary duty and fraud claims. Whitehead filed counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Before trial, the district court granted partial summary judgment to Okada on a legal question related to the interpretation of Section 1.5 of the Settlement Agreement. At trial, the jury found in favor of Okada on all of his claims, and against Whitehead on all of his counterclaims. The jury also awarded punitive damages to Okada.

Whitehead challenges only two issues on appeal: (I) the district court's decision to admit evidence that Whitehead made disparaging remarks about Okada, and (II) the district court's interpretation of the Settlement Agreement in its partial summary judgment order.

I.

Whitehead argues that the jury's verdict in this case was "irredeemably tainted" by the district court's decision to allow into evidence his statements

2

describing Okada as a "Jap" and a "[d]umb ass devil" who "thinks he can commit Hari-Kari and drive his plane into a ship and survive."

While the claims in this diversity case arise out of California law, the Federal Rules of Evidence govern the admissibility of evidence at trials conducted in federal court. *See Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010). Under the Federal Rules, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "[that] fact is of consequence in determining the action." Fed. R. Evid. 401. But a court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "[I]n determining whether the district court abused its discretion in applying [these rules], [reviewing courts] employ a 'highly deferential' standard of review, reversing only if the exercise of discretion was 'manifestly erroneous *and* prejudicial.'" *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1056 (9th Cir. 2015) (internal quotations and citations omitted).

The disparaging remarks in this case were properly admitted because they were highly relevant to contested issues at trial. First, the remarks were relevant to whether Whitehead acted with malice for purposes of determining Okada's entitlement to punitive damages, as the remarks were made contemporaneously with Whitehead's fraudulent conduct regarding the Ocean Ridge property. *See, e.g.*, *Price v. Kramer*, 200 F.3d 1237, 1251 (9th Cir. 2000) (finding that evidence of racial

3

bias "was important to proving the defendants['] conduct was 'malicious, wanton or oppressive or in reckless disregard of the plaintiffs' rights' which, according to the jury instructions, was necessary to the receipt of punitive damages"). Second, the disparaging remarks were highly relevant to Whitehead's credibility as a witness because they contradicted Whitehead's trial testimony that—in attempting to convince Okada to agree to the Kamprad deal—he had Okada's best interests in mind.

The highly probative nature of the disparaging remarks was not substantially outweighed by any unfair prejudice. All of the cases Whitehead cites in support of his unfair prejudice argument are inapposite, in that they all involved the exclusion of racist comments that had no connection to any contested issues. *See, e.g.*, *Green v. New Jersey Mfrs. Ins. Co.*, 734 A.2d 1147 (N.J. 1999); *MCI Express, Inc. v. Ford Motor Co.*, 832 So.2d 795 (Fla. App. 2002); *United States v. Johnson*, 2015 WL 4747309, No. 14–cr–00412–TEH (N.D. Cal. 2015). As discussed above, the disparaging remarks here were highly relevant to at least two contested issues in this case.

## II.

Whitehead finally argues that the district court's summary judgment order erroneously interpreted Section 1.5 of the Settlement Agreement as requiring Whitehead to record a lien within twenty-four hours of the closing of the Kamprad

4

transaction. But reviewing the district court's partial summary judgment ruling after a jury trial was conducted is improper, because even if the panel *agrees* with Whitehead and holds that the district court erred in interpreting Section 1.5, such a holding would *not* provide a basis on which to reverse the final judgment in this case. This is because the district court's interpretation of Section 1.5 was relevant only to the breach of contract claim—and in fact only to a *single ground* on which the jury found Whitehead liable for breach of contract. The jury found Whitehead liable for breach of contract on *three other independent grounds* and awarded a *single* measure of damages for the claim, which Whitehead does not challenge on appeal. Because the breach of contract verdict is independently supported by grounds unrelated to the district court's interpretation of Section 1.5, any error related to that interpretation at the summary judgment stage does not provide a basis for this court to reverse the district court's final judgment.

**AFFIRMED.**